IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| Terry Mitchell and Anne Mithcell, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 08-04069-CV-C-NKL |
| ) | |
| Village of Four Seasons, Thomas Reinhart, ) | |
| Gordon Ellison, Donald Rupin, Donald ) | |
| Vilmin, Neil Williams, Robert Davis, ) | |
| Thomas Laird, Robert Ashford, Steve ) | |
| Hackler, and Rockne Miller. ) | |
| ) | |
| Defendants. | |

**ORDER**

This lawsuit arises over a building code dispute. Plaintiffs Terry Mitchell and Anne Mitchell (collectively, "the Mitchells") filed claims for Constitutional violations and malicious prosecution against the above-listed Defendants (collectively, "Defendants") based on their assessment of alleged building code violations at the Mitchells' home. Before the Court is Defendants' Motion for Summary Judgment [Doc. # 63]. For the following reasons, the Court grants in part and denies in part the motion.

**I.    Factual Background**

   **A.    Fact Statements**

The Court has considered the Mitchells' factual statements which are supported by evidence. The Court deems admitted both parties' fact statements which have not been directly controverted. *See* Local Rule 56.1("Each fact in dispute shall be set forth in a

separate paragraph, . . . and, if applicable, shall state the paragraph number in the movant's listing of facts that is disputed. All facts set forth in the statement of the movant shall be deemed admitted for the purpose of summary judgment unless specifically controverted by the opposing party."). In considering the parties' statements of fact and evidence, the Court has drawn all inferences in favor of the Mitchells, the non-movants.

### B. Undisputed Facts

The Mitchells are husband and wife. They bought a home in Four Seasons, Missouri, in 2003. In November 2003, they received a building permit from Defendant Village of Four Seasons ("Village"). Apparently, the contractor they hired, Defendant Robert Davis ("Davis") did not complete all of the work they hired him to do in a satisfactory fashion and he ceased working for them in May 2004. The Mitchells moved into the home in July 2004, prior to obtaining an occupancy permit from the Village.

In 2002, before the Mitchells purchased their home, the Village passed an ordinance adopting the International Building Code. In Chapter 1 of the International Building Code adopted by the Village, Section 101.2 reads:

> **Scope.** The provisions of the *International Building Code* shall apply to . . . every building or structure or any appurtenances connected or attached to such buildings or structures.
> > **Exception:** Detached one- and two-family dwellings . . . shall comply with the *International Residential Code*.

[Doc. # 63, Ex. Y (emphasis original]. The parties dispute whether this section effectively adopted the International Residential Code. The Village has presented evidence that, even

2

if the ordinance did not adopt the International Residential Code, another standard building code was in effect.

Defendant Steve Hackler ("Hackler") was a Deputy Building Inspector for the Village. In September 2004, Hackler went to the Mitchells' home to inspect the premises. Hackler had called the Mitchells' house a "red flag house," which Hackler testified meant that work was being performed there without the requisite inspections and that he had been told to make sure he performed such inspections. Hackler prepared an Inspection Form detailing what he believed to be building code violations at the Mitchells' home; he also took photographs of an exposed propane line, eroding grade, a bowing deck, exposed electrical wires, an exposed electrical panel, an improperly-supported fireplace, and an improperly-installed glass railing. Anne Mitchell testified that, when inspecting the Mitchells' property, Hackler handed her a copy of his business card, apparently for his contracting company, and told her that he could help her.

Defendant Robert Ashford ("Ashford") was the Village's Building Inspector. He was not present when Hackler prepared his Inspection Form, but later made notes on it, indicating violations of the International Building Code, the National Electric Code, and the International Federal Gas Code. Ashford prepared a new Inspection Form to clarify the results of the inspection.

Ashford transmitted a typed version of the purported code violations – without citation to particular codes – to the Village attorney for prosecution. On the Village attorney's

request, Ashford sent the Village attorney notations, including the particular code sections violated.

Because Anne Mitchell made allegations of misconduct by Hackler and Ashford, the Village attorney referred the matter to the Missouri Highway Patrol for investigation. Thereafter, the Village attorney and the Mitchells' attorney agreed to a reinspection of the Mitchells' home.

The Village engaged the services of Defendant Rockne Miller ("Miller"), the Village Engineer, to do the reinspection. Miller's testimony indicates he was unfamiliar with the building codes in the Village. During his inspection, Miller determined that many of the prior code violations assessed by the Village had been fixed. Referencing the Village's prior Inspection Report, Miller found that five of the previous violations had not been corrected, including exposed wires in two areas, a drainage issue, and an uncorrected problem with deck railing. Terry Mitchell was present during Miller's inspection and Miller told Terry Mitchell how to fix some of the remaining violations.

Between the September 2004 inspection and June 2005, the Mitchells' attorney sent at least nine letters to the Village prosecutor who also serves as the Village attorney. That correspondence does request that the Village point the Mitchells to specific alleged code violations, but does not otherwise suggest that the Mitchells believed the code violations the Village was alleging were invalid.

The Village attorney testified that he is independent of the Board of Trustees of the Village and it is within his sole discretion to bring charges for violations. After investigating

the alleged violations, the Village attorney concluded it was appropriate to bring five charges against the Mitchells. He filed an Information in June 2005 in the Circuit Court of Camden County, Missouri. The Information charged violations of the International Building Code (which apparently referenced sections of the International Residential Code), as well as the National Electric Code, and described the violations found by Miller.

On the same day he filed the Information, the Village attorney sent the Mitchells' attorney a deferred prosecution agreement, which provided that the Mitchells were to erect a rail along their deck as provided by the International Residential Code, and enclosed a copy of the relevant International Residential Code provision. Upon the assurance that the remaining code violations had been remedied, the Village attorney filed an Amended Information alleging only the violation concerning the deck rail.

In July 2007, Davis, the Mitchells' former contractor, began employment with the Village.

In September 2007, the Village attorney made the decision to file a Memorandum of *Nolle Prosequi* for the Mitchells. The Village attorney testified that he elected to dismiss the case after he became aware of an appellate court decision from another state which indicated that the Village had not properly adopted the International Residential Code.

Although the Mitchells began occupying their home in July 2004 without an occupancy permit, they were able to remain in the home without Defendants interfering with their use or residency of the home. It appears that, at some point after the dismissal of the Mitchells' prosecution, the Village did issue an occupancy permit to the Mitchells; that

5

permit indicates that the building has passed final inspection and met code requirements for occupancy.

Anne Mitchell testified that several Defendants never filed a lawsuit against the Mitchells. Those Defendants include Davis, Miller, Ashford, Hackler, and Defendant Thomas Laird (who was the Village Clerk and Administrator). Other Defendants in this case include Thomas Reinhart, Gordon Ellison, Donald Rupin, Donald Vilmin, and Neil Williams, (collectively, "Trustee Defendants") all of whom the Complaint in this case states were Village Trustees.

## II.  Procedural History

### A.  Complaint

In April 2008, the Mitchells filed the Complaint in this case. Pursuant to 42 U.S.C. § 1983, Count I alleges that all Defendants, acting under color of state law, denied the Mitchells substantive and procedural due process and deprived them of property and/or liberty rights secured by the Constitution. Count II alleges a claim for malicious prosecution against all Defendants, stating that they instituted criminal process against the Mitchells with malice and without probable cause. The Complaint indicates that each Defendant is liable in his official and individual capacities as to each count.

### B.  Discovery

The parties conducted full discovery in this case, including depositions and written discovery. Resolving a discovery dispute, the Court ordered Defendants to produce records

6

of Village meetings. The Mitchells argued that these records held potential evidence of Defendants' misconduct.

### C. Motion for Summary Judgment

Defendants did not file a motion to dismiss. They now move for summary judgment on both counts, arguing that the Mitchells cannot establish elements of their claims as a matter of law, and that they are entitled to qualified immunity.

## III. Discussion

### A. Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether summary judgment is appropriate, a court must look at the record and any inferences to be drawn from it in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The moving party "bears the initial responsibility of informing the district court of the basis for its motion," and must identify "those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party satisfies its burden, Rule 56(e) requires the nonmoving party to respond by submitting evidentiary materials that designate "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Rule 56:

7

mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

*Celotex*, 477 U.S. at 322 (cited in *Jetton v. McDonnell Douglas Corp.*, 121 F.3d 423, 427 (8th Cir. 1997).

### B. Claims of Constitutional Violations

Under Eighth Circuit law, "[t]o state a cognizable claim under § 1983, a plaintiff's complaint must allege that the conduct of a defendant acting under color of state law deprived the plaintiff of a right, privilege, or immunity secured by the Constitution of the United States." *See Walker v. Reed*, 104 F.3d 156, 157 (8th Cir. 1997). Thus, in addition to showing that Defendants acted under color of state law, the Mitchells must show that Defendants deprived them of a Constitutional right.

#### 1. Substantive Due Process

The Mitchells cannot establish a viable substantive due process claim. To prevail on their substantive due process claim, the Mitchells must show that Defendants' conduct deprived them of a Constitutionally protected right by way of conduct that was "truly irrational . . . something more than . . . arbitrary, capricious, or in violation of state law." *Creason v. City of Washington*, 435 F.3d 820, 824-25 (8th Cir. 2006) (indicating that plaintiffs disputing local zoning laws must show conduct that was sufficiently "arbitrary" and "conscience shocking" to be constitutionally tortious) (citing *Klein v. McGowan*, 198 F.3d 705, 710 (8th Cir. 1999) (internal quotation omitted).

8

Despite Defendants' summary judgment challenge, the Mitchells have not articulated the deprivation of a Constitutionally protected right. "Analysis of a due process claim, either substantive or procedural due process, begins with an examination of the constitutional interest which allegedly has been violated." *Carolan v. City of Kansas City, Mo.*, 813 F.2d 178, 181 (8th Cir. 1987) (considering a § 1983 claim by a restaurant owner based on Kansas City's denial of an occupancy permit following the restaurant's failure to satisfy the requirements for obtaining such a certificate). The Complaint states that "Defendants denied the Mitchells substantive and procedural due process under the Fifth and Fourteenth Amendments . . . and unfairly deprived the Mitchells of their property and/or liberty rights." [Doc. # 1 at 10.] In their supplemental opposition brief, the Mitchells state: "the Mitchells allege that the Defendants denied them property and/or liberty rights secured by the Constitution in that two inspections conducted at their residence were based on building code sections that had not been previously enacted or adopted by the Village by ordinance and/or were inapplicable to the cited conditions resulting in the denial of an occupancy permit." [Doc. # 69.] Thus, the Mitchells argue that they were deprived of their entitlement to an occupancy permit when Defendants inspected their home based on ordinances which were either improperly enacted or improperly applied.

State law creates a property interest in occupancy permits where a municipality, under state law or ordinance, does not have discretion and must issue the permit to applicants complying with statutory requirements and the applicant has complied with those requirements. *Carolan*, 813 F.3d at 181. Here, the Mitchells do not argue or present any

evidence from which a jury could find – that they were in compliance with whatever building code applied such that they were entitled to an occupancy permit. They do not offer evidence that Defendants selectively enforced the building code. They do not argue that Defendants were without discretion to grant or deny the occupancy permit. Instead, they argue that Defendants applied the wrong code in denying them an occupancy permit. This is not enough to establish a Constitutional right to an occupancy permit. *See generally Carolan*, 813 F.3d at 191-82 (finding no property right in an occupancy permit where the plaintiff restaurant owners had not complied with the requirements for obtaining such a permit).

The Mitchells do not articulate any other possible property or liberty right of which they were deprived. Anne Mitchell's testimony clarifies that, other than perhaps the inconvenience of two or three inspections, Defendants never interfered with the Mitchells' occupancy of their home. The Mitchells do not allege any conduct on Defendants' part which meaningfully interfered with their use or possession of their home. Where the Mitchells affirmatively applied to the Village for a building permit, they subjected themselves to the Village's inspection process; the inconvenience of that process does not constitute deprivation of a Constitutional right.

In addition, the Mitchells do not have a Constitutional right to be free from their alleged malicious prosecution. The Constitution does not guarantee that charges will be filed against only the guilty and a malicious prosecution claim alone will not support a § 1983 claim. *Gunderson v. Schlueter*, 904 F.2d 407, 409 (8th Cir. 1990) (citation omitted)

10

(addressing allegedly improper prosecution of fish and game regulations; "The Constitution does not mention malicious prosecution . . . [and federal circuit courts] are uniform in holding that malicious prosecution by itself is not punishable under § 1983 because it does not allege a constitutional injury."). The Mitchells have not articulated or presented evidence that Defendants violated any Constitutional right.

As for whether Defendants' conduct was irrational, the Mitchells appear to present two arguments. First, they indicate that Hackler assessed violations at the first inspection in order to garner business from the Mitchells. However, the only evidence they offer in support of that allegation is Anne Mitchell's testimony that Hackler handed her a business card and offered to help her correct the violations. They do not allege further action by Hackler or any other Defendant with regard to getting business from them or other bad faith motive. No reasonably jury could find that this one action by one Defendant rises to the level of "conscience shocking" governmental behavior.

Second, the Mitchells seem to argue that (1) Defendants improperly interpreted the Village's May 2002 ordinance as having incorporated the International Residential Code, (2) that the ordinance was void for vagueness concerning which building code applied to their home, and (3) that Defendants are liable for enforcing that void ordinance. This argument mimics that presented in *Chesterfield Development Corp. v. City of Chesterfield*, 963 F.2d 1102 (8th Cir. 1992). In *Chesterfield*, the city enacted a zoning plan and ordinance without following the proper state law procedures for doing so, but the city was not aware of the resulting invalidity. *Id.* at 1103. The city enforced the plan and ordinance against a

11

developer, refusing to rezone property which the developer had purchased. *Id.* The developer sued under § 1983, claiming that the city's enforcement of the invalid plan and ordinance deprived it of property without due process. *Id.* The developer claimed that its property was not subject to the invalid ordinance and plan and that the city had no right to restrict the developer's use of the property. *Id.*

The Eighth Circuit squarely rejected the developer's argument that the absence of law – resulting from the invalidity of the plan and ordinance – turned application of that plan and ordinance into a substantive due process violation. *Id.* The *Chesterfield* court found the developer's claim to be too typical of an ordinary dispute with a town planning agency to rise to the level of a constitutional violation. *Id.* at 1104. As an example of the truly irrational governmental actions required to establish substantive due process violations, the *Chesterfield* court cited the example of applying an "ordinance only to persons whose names begin with a letter in the first half of the alphabet." *Id.* at 1103 (citation omitted). The Eighth Circuit stated, "Our decision would be the same even if the City had knowingly enforced the invalid zoning ordinance in bad faith and had no claim that [alternative] zoning applied to the property." *Id.* at 1104. The *Chesterfield* court rejected the developer's argument that the city's enforcement of an invalid ordinance is a "truly irrational" government action which gives rise to a substantive due process violation. *Id.* Applying *Chesterfield* to this case, the Mitchells' substantive due process claim would not survive even if Defendants (a) knowingly enforced an invalid zoning ordinance which was void for vagueness with regard to which building code applied and (b) did so in bad faith and (c) no alternative building code applied.

12

Despite Defendants' summary judgment challenge and after full discovery, the Mitchells do not articulate a violated Constitutional right or conduct which rises to the level of Constitutionally tortious. The Mitchells cannot prevail on their substantive due process claims.

### 2. Procedural Due Process

Nor can the Mitchells show that they were deprived of procedural due process. To prevail on a procedural due process claim, in addition showing a Constitutionally protected right, a plaintiff must show that it was deprived of that right without due process of law. *Zinermon v. Burch*, 494 U.S. 113, 125–26 (1990).

The Mitchells identify no deprivation of a right without due process. They do not indicate that they suffered a deprivation of due process as part of the inspection process, and the facts indicate no such deprivation. When the Mitchells alleged misconduct on the part of inspectors, the Village referred the matter to the Highway Patrol for investigation and arranged a new inspection. *See generally Goe v. City of Mexico*, 217 Fed. Appx. 583 (8th Cir. 2007) (finding that a city satisfied due process requirements before destroying a mobile home for building code violations where it sent him several written notices of the violations and provided him with an opportunity to appeal).

Even if it would have been improper for Defendants to decide whether to prosecute the Mitchells, the Mitchells offer no evidence reasonably supporting their apparent claim that Defendants – as opposed to the Village attorney – made that decision. The Mitchells do present testimony from one Village Trustee who said he did not know how the decision to

13

prosecute them was made and stated, "I don't know, vote possibly." In contrast, Defendants present the unequivocal testimony of the Village attorney that he personally made that decision alone. Here, even if Defendants acted with a "personal vendetta" against the Mitchells – and there is no evidence that they did so – there is no indication of a procedural defect in Defendants' actions. *See Gunderson*, 904 F.3d at 407 (finding that a malicious fish and game prosecution was not procedurally erroneous where the criminal complaint was properly filed and the criminal defendant ultimately acquitted). Despite full discovery and a motion for summary judgment, the Mitchells have not identified a procedural due process claim.

### 3. Takings

The Mitchells also have not stated or established a viable Takings claim. The Takings Clause of the Fifth Amendment, made applicable to the states through the Fourteenth Amendment, provides that private property may not "be taken for public use, without just compensation." U.S. Const. Amend. V. Where government regulation is sufficiently onerous, courts may consider the regulation to have the same effect as a physical taking of land – a "regulatory taking." *See Lucas v. South Carolina Coastal Council*, 505 U.S. 1003 (1992). Zoning laws may effect takings where they (1) do not substantially advance legitimate governmental interests or (2) deny the owner of economically viable use of land. *See Penn Cent. Transport. Co. v. New York*, 438 U.S. 104, 138 n. 36 (1978); *Lucas*, 505 U.S. at 1020 ("We think, in short, that there are good reasons for our frequently expressed belief that when the owner of real property has been called upon to sacrifice all economically

14

beneficial uses in the name of the common good, that is, to leave his property economically idle, he has suffered a taking.").

The Mitchells do not allege either of these factors here. They do not dispute that Defendants had a legitimate interest in establishing and enforcing minimum building code requirements, or that Defendants assessed them for violations which actually complied with applicable codes. *See generally Devines v. Maier*, 728 F.2d 876, 886 (7th Cir. 1984) (indicating that enforcement of building codes to avoid substandard housing was within a city's "regulatory duty to protect the health, safety, morals, and general welfare to the public"). Anne Mitchell reluctantly testified that she had no evidence that the Mitchells were deprived of the use of their property in any way. No reasonable jury could find that Defendants' conduct amounted to a Constitutional "taking."

### 4. Equal Protection

It does not appear that the Mitchells are claiming a violation of the Equal Protection clause of the Fourteenth Amendment. Because they do not allege that they are members of a protected or quasi-protected class, rational basis review would be applied to such a claim. *See City of Cleburne, Tex. v. Cleburne Living Center*, 473 U.S. 432, 439 (1985). The Mitchells do not argue or present evidence that the Village did not have a legitimate state interest in promulgating and enforcing its building codes. *See id.* Any Equal Protection claim would fail the rational basis test.

### C. Malicious Prosecution

15

The Mitchells' malicious prosecution claim also fails as a matter of law. In Missouri, to prevail on a claim for malicious prosecution, a plaintiff must show "(1) the commencement of a prosecution against the plaintiff; (2) the instigation by the defendant; (3) the termination of the proceeding in favor of the plaintiff; (4) the want of probable cause for the prosecution; (5) the defendant's conduct was actuated by malice; and (6) the plaintiff was damaged." *Sanders v. Daniel Int'l Corp.*, 682 S.W.2d 803, 807 (Mo.1984) (en banc).

While it appears unlikely that the Mitchells can establish any but the first element of their malicious prosecution claim, two of those elements warrant discussion. First, the Mitchells have not produced any evidence from which a jury could infer malicious intent by any Defendant in the Mitchells' prosecution. The only evidence which hints at maliciousness is that Hackler considered their home a "red flag" house because work was proceeding improperly and that he handed Anne Mitchell a business card stating he could help her remedy the alleged violations. No reasonable jury could find (without speculation) "malice" on the part of Hackler or any other Defendant based on this evidence alone.

Finally, the Mitchells have offered no indication that their prosecution resulted in termination of that case in their favor. In Missouri, a prosecutor's *nolle prosequi* is not evidence that a case is terminated in favor of the alleged offender for purposes of a malicious prosecution action. *See Doyle v. Crane*, 200 S.W.3d 581, 588-89 (Mo. Ct. App. 2006). The Mitchells cannot show that they prevailed in the criminal action. As such, they cannot prevail on their malicious prosecution claim.

### D.     Qualified Immunity

16

Because the Court finds that no reasonable jury could find in the Mitchells' favor, the Court does not reach the issue of qualified immunity.

### E. Rule 11

As part of their motion for summary judgment, Defendants move for sanctions under Rule 11 of the Federal Rules of Civil Procedure. While the Court agrees that the Mitchells' claims are without legal or any evidentiary basis, the Court declines to issue sanctions at this time.

## IV. Conclusion

Defendants argued that, and presented evidence showing that, the Mitchells cannot establish the elements of their claims. At this summary judgment phase, it was incumbent upon the Mitchells to present contrary argument as well as evidence from which a reasonable jury could find in their favor. As discussed above, they have not done so.

Accordingly, it is hereby ORDERED that Defendants' motion for summary judgment [Doc. # 63] is GRANTED in part and DENIED in part: the Court grants summary judgment in favor of Defendants on all claims; the Court denies Defendants' request for Rule 11 sanctions.

s/ NANETTE K. LAUGHREY
NANETTE K. LAUGHREY
United States District Judge

Dated: June 3, 2009
Jefferson City, Missouri